# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| ROBERT MCFARLAND, | Case No. 09-cv-929 |
| Plaintiff, | Judge Herman J. Weber |
| | Magistrate Judge Timothy S. Black |
| vs. | |
| BREADS OF THE WORLD, LLC, *et al*., | |
| Defendants. | |

## REPORT AND RECOMMENDATION[1] THAT:
## (1) DEFENDANTS' MOTIONS TO DISMISS (Docs. 9, 10, 11) BE GRANTED IN PART AND DENIED IN PART; AND (2) PLAINTIFF'S MOTION TO AMEND (Doc. 14) BE GRANTED

This civil action is before the Court on Defendants' motions to dismiss (Docs. 9, 10, 11) and the parties' responsive memoranda (Docs. 15, 16, 17, 18, 19, 20). Also before this Court is Plaintiff's unopposed motion for leave to amend. (Doc. 14).

## I. BACKGROUND FACTS

Plaintiff was formerly employed by Defendant Breads of the World, LLC ("Breads"). (Doc. 1 at ¶ 12). Defendants Mark Dunn and Diana Ballato were employees of Breads and Plaintiff's supervisors. (*Id*. at ¶¶ 14-17). Plaintiff was terminated by Breads on or about July 21, 2009, and the allegations of Plaintiff's complaint are based upon this allegedly unlawful termination.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Plaintiff alleged that he was told by Defendant Dunn to terminate African-American employees and to refuse to hire African-American applicants. (Doc. 1 at ¶ 16). Plaintiff states that he actively opposed such discriminatory practices and continued to hire and employ African-Americans at the branch. (*Id*. at ¶¶ 18-19). Plaintiff alleges that as a result of this opposition he was belittled, harassed, ridiculed, bullied, and ultimately terminated by Defendants Dunn and Ballato. (*Id*. at ¶ 20). Plaintiff claims that Defendants knowingly, willfully, wantonly, and with reckless disregard intentionally inflicted emotional distress upon him and that he has suffered and will continue to suffer humiliation, embarrassment, severe emotional distress, and loss of compensation because of Defendants' actions. (*Id*. at ¶¶ 47-48). Plaintiff further alleges that all Defendants are joint and severally liable in each of their personal and official capacities for causing such harm. (*Id*. at ¶ 49).

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint.

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Ashcroft v. Iqbal*,  --- U.S. --- , 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949, 1950 (citing *Twombly*, 550 U.S. at 556, 570). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 556).

## III.　ANALYSIS

### A.　Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) the defendant intended to cause, or knew or should have known that his actions would result in, serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure. *Ashcroft v. Mt. Sinai Med. Ctr*., 68 Ohio App.3d 359, 366 (Ohio Ct.

App. 1990).

The standard for successfully pleading a cause of action for intentional infliction of emotional distress is quite high. The acts concerned must, by their nature, go so far beyond all possible bounds of decency as to be considered atrocious and utterly intolerable in a civilized community. *Bryans v. English Nanny & Governess School, Inc.*, 117 Ohio App.3d 303, 318 (Ohio App. 1996). Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 375 (1983). The conduct must be such that, if it were described to an average member of the community, would "arose his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id*.

For purposes of this motion the Court must assume that all of the allegations in the complaint are true. Plaintiff alleges in his complaint that "Defendants Dunn and Ballato belittled, harassed, ridiculed, bullied, and ultimately terminated [him]" and "knowingly, willfully, wantonly, with reckless disregard, and intentionally inflicted emotional distress upon [him]" (Doc. 1 at ¶ 20, 47). As a result, Plaintiff claims that he "has suffered and will continue to suffer humiliation, embarrassment, severe emotional distress, and loss of compensation." (*Id*. at ¶¶ 34, 48).

This tort, when approached in the context of a motion to dismiss for failure to state a claim, peculiarly places the burden upon the court to make an initial assessment of

whether, as a matter of law, the conduct alleged is sufficiently outrageous. Plaintiff has alleged that Defendant prohibited him from hiring African Americans, required him to terminate African Americans, required him to break federal and state law by terminating and refusing to hire African Americans, and ultimately terminated him for his refusal to discriminate. (Doc. 1 at ¶¶ 16-17, 24, 38). The undersigned finds that such conduct is outrageous and "intolerable in a civilized community." Additionally, while the Court recognizes that humiliation and embarrassment are insufficient injuries to sustain a claim, Plaintiff also alleges that he suffered severe emotional distress. Accordingly, at this stage in the litigation,[2] the undersigned concludes that Plaintiff has alleged sufficient facts to state a claim for intentional infliction of emotional distress.

### B.    Defendants Dunn and Ballato

Defendants Dunn and Ballato claim that they were improperly named in Plaintiff's first cause of action (Title VII), as well as in his third cause of action (Title VII), because individual supervisors and/or managers like them are not liable in their individual capacities under Title VII of the Civil Rights Act of 1964. The undersigned agrees, and the Sixth Circuit has held that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII."

---

[2] *Twombly's* "plausibility" pleading standard is not too great of a departure from the previous interpretations of notice pleading. *Lang v. TCF Nat'l Bank*, 249 Fed. Appx. 464, 466 (7th Cir. 2007) (stating that even after *Twombly*, complaints in federal court need only satisfy a notice pleading standard).

*Wathen v. General Electric Co.*, 115 F.3d 400, 405 (6th Cir. 1997).

In response, Plaintiff contends that he never intended to argue that Dunn and Ballato were liable in their personal capacities,[3] but rather than they are liable in their official capacities. Conversely, Defendants contend that they cannot be held liable in their official capacities either, because Plaintiff is not an "alter ego" of its employer.

This Court recently noted that the issue of whether a supervisor may be held liable under Title VII in his or her official capacity "apparently remains unresolved in this Circuit even eight years [after the *Little* court made this observation]." *Monsul v. Ohashi Technica U.S.A., Inc.*, Case No. 2:08-cv-958, 2009 U.S. Dist. LEXIS 68680, at *6 (S.D. Ohio Aug. 6, 2009) (citing *Butler v. Cooper-Standard Auto. Inc.*, No. 3:08 CV 162, 2009 U.S. Dist. LEXIS 13448, at *17 (N.D. Ohio Feb. 23, 2009) ("The Sixth Circuit, however, has left open the possibility that 'a supervisor may be held liable on his or her official capacity upon a showing that he or she could be considered the "alter ego" of the employer.'" (quoting *Little v. B.P. Exploration & Oil Co.*, 265 F.3d 357, 362 n.2 (6th Cir. 2001))). "At least one district court in this Circuit has suggested that such an official capacity claim under Title VII can proceed." *Id*. at *7 (citing *Osman v. Isotec, Inc.*, 960 F. Supp. 118, 121 (S.D. Ohio 1997) ("In light of the overwhelming weight of recent authority, the Court finds that under Title VII a supervisor may be sued only in his or her

---

[3] Plaintiff even concedes in his memorandum in opposition that Defendants cannot be held liable in their individual capacities. (Doc. 15 at 2).

official capacity as the agent of the employer")).

Additionally, the individual defendants argue that Plaintiff cannot bring a Title VII claim against them in their official capacities because such claims can be asserted only against public and not private employer supervisors. *See, e.g., Smith v. American Int'l Group, Inc*., No. 01cv1652, 2002 U.S. Dist. LEXIS 7472, at *5 (S.D.N.Y. Apr. 26, 2002) ("Moreover, the better reasoned cases hold that a Title VII suit cannot be maintained against an individual employed by a private employer in his 'official capacity.'").

The factual allegations of the complaint raise the possibility that the individual defendants had varying degrees of significant control over Plaintiff's hiring, working conditions, and termination such that they could potentially be considered the "alter ego" of Bread. This would support the position that Plaintiff has pled plausible Title VII claims against the individual defendants in their official capacities. Such a contention assumes that any justification for official capacity suits that exist in regard to public employers either extend to or do not make nonsensical such suits against private employers (*e.g*., avoiding Eleventh Amendment or immunity problems). But such unnecessary private employer official capacity claims are wholly duplicative of the Title VII claims against Bread and add nothing to this litigation. Therefore, dismissal of the redundant claims is permissible. *See Miller v. Rudd*, No. C2-97-317, 2001 U.S. Dist. LEXIS 25974, at *11 (S.D. Ohio Feb. 6, 2001) (collecting cases permitting dismissal of official capacity claims). *See also Thanongsinh v. Bd. of Educ*., 462 F.3d 762, 771 (7th Cir. 2006) (recognizing without discussion that district court had dismissed official

capacity Title VII claim against an individual as redundant and synonymous with claim against employer); *Collins v. Meike*, 52 F. App'x 835, 836 (7th Cir. 2002) (same); *Norman v. FPL Foods, LLC*, No. CV 109-029, 2009 U.S. Dist. LEXIS 56139, at *2 (S.D. Ga. July 1, 2009) ("[I]n a Title VII action, a court properly dismisses employees sued in their official capacities where the plaintiff also properly names his employer as a defendant.").

Although Plaintiff can assert Title VII claims against Dunn and Ballato in their official capacities as agents of Bread, the claims are actually claims against Bread, Plaintiff's employer, and any recovery will run against Bread only. Therefore, the undersigned concludes that the motion to dismiss the Title VII claims against the individual defendants is well taken, while noting that the substantive bases for these claims survive in this litigation as embodying the Title VII claims against Bread. This does not narrow any potential remedy available to Plaintiff because Bread and only Bread can be responsible for any relief he might obtain (even under the official capacity theory), not the individual defendants.

**C.     Leave to Amend**

Rule 15(a) embodies "a liberal policy of permitting amendments to ensure the determinations of claims on their merits." *Marks v. Shell Oil Co.,* 830 F.2d 68, 69 (6th Cir. 1987). In the absence of any opposition by Defendants, and because leave to amend "shall be freely granted when justice so requires," Fed. R. Civ. P. 15(a); *Moore v. City of Paducah,* 790 F.2d 557, 559-60 (6th Cir. 1986), the undersigned concludes that

Plaintiff's motion for leave to file an amended complaint (Doc. 19) should be granted.

## VI. CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that:

(1) Defendants' motions to dismiss (Docs. 9, 10, 11) be **GRANTED** as to Defendants Dunn and Ballato on Plaintiff's first and third causes of action and **DENIED** as to Plaintiff's fourth cause of action; and

(2) Plaintiff's motion for leave to amend (Doc. 14) be **GRANTED**.

Date: April 5, 2010                                   s/ Timothy S. Black
                                                     Timothy S. Black
                                                     United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT MCFARLAND, | : | Case No. 09-cv-929 |
| | : | |
| Plaintiff, | : | Judge Herman J. Weber |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| | : | |
| BREADS OF THE WORLD, LLC, *et al*., | : | |
| | : | |
| Defendants. | : | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **14 DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **14 DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).