# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ROBERT MCFARLAND,                                   Case No. 1:09-cv-929

           Plaintiff,                              Weber, J.
                                                    Bowman, M.J.

    v.

BREADS OF THE WORLD, LLC., et al.,

           Defendants.

## REPORT AND RECOMMENDATION

Plaintiff Robert McFarland, through counsel, filed a complaint alleging that his employer unlawfully discriminated against him in the course of his employment.  Plaintiff named two individuals, Mark Dunn and Diana Ballato, and two corporate entities, Breads of the World, LLC and Panera, LLC, as Defendants.  On April 5, 2010, the then-presiding magistrate judge[1] recommended granting in part and denying in part Defendants' motion to dismiss.  (Doc. 22).  The court adopted that Report and Recommendation ("R&R") on May 12, 2010.  (Doc. 28).

On May 26, 2010, Defendants filed three separate motions to dismiss Plaintiff's amended complaint.  (Docs. 33, 34, 35).  In addition to the pending motions to dismiss, Defendant Panera, LLC has filed a motion for summary judgment (Doc. 39) to which Plaintiff has filed both a response (Doc. 43) and a motion seeking discovery pursuant to Rule 56(f) (Doc. 44).

---

[1] Following Judge Timothy Black's elevation to the district court, the case was reassigned first to Magistrate Judge Wehrman, and ultimately, to the undersigned magistrate judge.

All pending motions have been referred to the undersigned for initial consideration and a Report and Recommendation.  Having completed that review, I recommend for the reasons discussed herein that: 1) Defendants' respective motions to dismiss (Docs. 33, 34, 35) be denied; 2) Defendant Panera LLC's motion for summary judgment (Doc. 39) be granted; and that 3) Plaintiff's motion for additional Rule 56(f) discovery (Doc. 44) be denied.

## I.  Factual and Procedural Background

The background of this case was previously set forth by Judge Black in his R&R of April 5, 2010, but is restated for the convenience of this court:

> Plaintiff was formerly employed by Defendant Breads of the World, LLC ("Breads").  (Doc. 1 at ¶12).  Defendants Mark Dunn and Diana Ballato were employees of Breads and Plaintiff's supervisors.  (*Id.* at ¶¶14-17).  Plaintiff was terminated by Breads on or about July 21, 2009, and the allegations of Plaintiff's complaint are based upon the allegedly unlawful termination.
>
> Plaintiff alleged that he was told by Defendant Dunn to terminate African-American employees and to refuse to hire African-American applicants.  (Doc. 1 at ¶16).  Plaintiff states that he actively opposed such discriminatory practices and continued to hire and employ African-Americans at the branch.  (*Id.* at ¶¶18-19).  Plaintiff alleges that as a result of this opposition he was belittled, harassed, ridiculed, bullied, and ultimately terminated by Defendants Dunn and Ballato.  (*Id.* at ¶20).  Plaintiff claims that Defendants knowingly, willfully, wantonly, and with reckless disregard intentionally inflicted emotional distress upon him and that he has suffered and will continue to suffer humiliation, embarrassment, severe emotional distress, and loss of compensation because of Defendants' actions.  (*Id.* at ¶¶47-48).  Plaintiff further alleges that all Defendants are joint[ly] and severally liable in each of their personal and official capacities for causing such harm.  (*Id.* at ¶49).

(Doc. 22 at 1-2).  Although some of the paragraph numbers have changed, Plaintiff includes the same allegations in the Amended Complaint filed on May 13, 2010.  (Doc. 29).

2

The court previously dismissed Plaintiff's Title VII claims against Defendants Dunn and Ballato on grounds that individual supervisors and/or managers are not liable in their individual capacities under Title VII of the Civil Rights Act of 1964 (Doc. 22 at 5), and because any claims against Defendants in their "official capacities" were "wholly duplicative of the Title VII claims against Breads and add nothing to this litigation."  (Doc. 22 at 7).  The court granted Plaintiff's motion to amend his complaint to add a claim for hostile work environment "in the absence of any opposition by Defendants, and because leave to amend shall be freely granted when justice so requires."  (Doc. 22 at 8)(internal quotation omitted).

**II.  Analysis**

**A.  Defendants' Motions to Dismiss (Docs. 33, 34, 35)**

Although Bread, Panera, and the two individual Defendants have filed three separate motions to dismiss, Defendants' motions are premised on the same arguments and therefore will be addressed together.  Defendants contend that Plaintiff's newly added hostile work environment claim should be dismissed under Federal Rule of Civil Procedure 12(b)(1) based on Plaintiff's alleged failure to exhaust his administrative remedies, and under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

**1.  Failure to Exhaust Administrative Remedies**

Defendants first argue that this court lacks subject matter jurisdiction to review Plaintiff's hostile work environment claim, because Plaintiff failed to include that claim in his EEOC charge as required under Title VII.  *See* 42 U.S.C. §2000e-5.

Although the Sixth Circuit held that the requirement that a claim be included in

administrative proceedings is jurisdictional in *Ang v. The Procter & Gamble Co.,* 932 F.2d 540, 545 (6th Cir. 1991), that holding has been abrogated by more recent cases.  *See Hill v. Nicholson*, 383 Fed. Appx. 503 (6th Cir. 2010)(holding that requirement is not jurisdictional in Title VII context); *see also Union Pacific R. Co. v. Brotherhood of Locomotive Engineers*, 130 S. Ct. 584, 596 (2009)(citing cases holding that various Title VII provisions are nonjurisdictional); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S. Ct. 1235 (2006); *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 401-02 (6th Cir. 2008).

Even if the requirement is not jurisdictional, however, numerous courts have held that a Title VII complaint "must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Sain v. American Red Cross*, 233 F.Supp.2d 923, 929 (S.D. Ohio 2002)(internal quotation and citation omitted). Defendants contend that Plaintiff's EEOC charge was insufficient to put his employer on notice that he was claiming the existence of a hostile work environment.  If Defendants are correct, then dismissal remains appropriate based upon the failure to exhaust administrative remedies.

On his EEOC form, Plaintiff checked the box labeled "retaliation" to describe the type of discrimination.  The form contains no separate "hostile work environment" box. Plaintiff clearly indicated that the dates on which the alleged discriminatory conduct took place occurred between December, 2008 and July 21, 2009.  Plaintiff initially marked "continuing action" but subsequently crossed out that mark.  (Doc. 34-1).  The narrative portion of Plaintiff's EEOC claim alleged:

> Mr. McFarland's Supervisor was Mark Dunn, a white male.  Robert McFarland was the General Manager of the Tri-County Panera Bread

4

location. In December of 2008, Mark Dunn told Mr. McFarland to "clean up" the store and told him to clean up the store's "image" by getting rid of the African American workers, and to stop hiring African Americans. Mr. Dunn stated the customers wanted to see "what they are." Mr. McFarland actively opposed this discriminatory practice and told Mr. Dunn he would hire the best people for the job, which included African Americans, after this meeting. ... Mr. Dunn continued to ridicule Mr. McFarland and stated he needed to clean up the stores "image." Mr. McFarland continued to get in trouble for hiring African Americans as it obviously was not the "image" Mr. Dunn wanted in this store. In April of 2009, Mr. Dunn's supervisor, Diana Balato, came to the store and belittled and harassed him for over four hours. It was obvious that the reason for his treatment was due to his decision to oppose the discriminatory practices in which he was told to do - namely, firing and not hiring African Americans. ... Thereafter, Mr. McFarland was placed on a 30 day probationary period and was subsequently fired on July 21, 2009. ... Interestingly, Mr. McFarland was told he was fired because his sales were down. However, Mr. Heinrich, Mr. McFarland's replacement, was the general manager of another location who had just received a bad review and his sales were significantly worse....

(Doc. 34-1).

Defendants assert that an EEOC investigation into Plaintiff's current hostile work environment claim would not "reasonably grow out of" Plaintiff's original allegations before the EEOC, because all that Plaintiff alleged were a few "discrete acts." In *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010), the Sixth Circuit held that "the inclusion in an EEOC charge of a discrete act or acts, standing alone, is insufficient to establish a hostile-work-environment claim for purposes of exhaustion." Rather, to satisfy the exhaustion requirement, a court must be able to reasonably infer the allegations in the complaint from the facts alleged in the charge. *Id. (citing Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1994)).

In his amended complaint, Plaintiff alleges that after his supervisor instructed him in December 2008 to terminate African American employees and to refuse to hire any African American employees, Defendants "began to belittle, harass, ridicule and bully

5

McFarland." (Doc. 29 at ¶24).  As part of his hostile work environment claim, Plaintiff also alleges that Defendants Dunn and Ballato "engaged in a persistent pattern of severe and pervasive harassment, including, but not limited to, belittling him in front of customers and other employees, screaming at McFarland for hours at a time, and threatening McFarland's employment when he refused to abide by their discriminatory conduct." (*Id*. at ¶52).  He further claims that the corporate Defendants "allowed Dunn and Ballato to continue harassing Plaintiff." (*Id.* at ¶60).

Although EEOC charges are construed liberally when filed by *pro se* litigants, in this case Plaintiff was represented by the same attorney during his EEOC proceedings as he is in this court.  Defendants point out that the presumption of liberal construction of the scope of an EEOC charge is unnecessary when a charging party is represented by counsel at the administrative stage of proceedings.  *See Ang*, 922 F.2d at 546.

While a fair statement of the law, the fact that a court is not required to construe the scope of an  EEOC charge liberally when a litigant is represented by counsel does not mean that a court must construe an attorney-drafted charge in the narrowest possible way. Based on the allegations presented in the EEOC charge, I conclude that Plaintiff has adequately exhausted his administrative remedies for the hostile work environment claim presented in the amended complaint.  In addition to describing three specific incidents over a seven month period of time, Plaintiff alleged before the EEOC that Defendant Dunn "*continued* to ridicule Mr. McFarland and stated he needed to clean up the stores [sic] 'image,'" and that Plaintiff "*continued* to get in trouble for hiring African Americans." (Doc. 34-1, emphasis added).  The EEOC charge includes an April 2009 incident in which Plaintiff's supervisor is alleged to have "belittled and harassed [Plaintiff] for over four

6

hours." As compared to the allegations in the EEOC charge, the allegations in the amended complaint are sufficiently similar to support a finding of administrative exhaustion of Plaintiff's hostile work environment claim.

The cases relied upon by Defendants are easily distinguished. In none of those cases did the plaintiffs allege <u>continuing</u> ridicule and harassment; rather, the cases involved allegations in the EEOC charge that were wholly dissimilar to the allegations of the complaint. *See, e.g., Gray v. U.S. Postal Service*, 133 F. Supp.2d 593, 597-598 (N.D. Ohio 2001)(affirming dismissal of discrimination claim based on sex where EEOC charge referenced only national origin and retaliation); *see also Jones v. City of Franklin*, 309 Fed. Appx. 938 (6th Cir. 2009)(where plaintiffs' EEOC allegations focused on racial discrimination concerning evaluation scores and a failure to promote, but failed to include many incidents where white firefighters made racially derogatory remarks or engaged in hostile conduct directed at black firefighters, employer would not have been put on notice of hostile work environment claim).

### 2. Failure to State a Claim

Defendants additionally argue that the hostile work environment claim is subject to dismissal for failure to state a claim under Rule 12(b)(6). To prove a racially hostile work environment claim, a plaintiff must demonstrate that: 1) he was a member of a protected class; 2) who was subjected to unwelcome racial harassment; 3) based on his race; 4) that unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment; and 5) that the employer is liable. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009)(citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)).

7

Defendants concede that Plaintiff's allegations are sufficient to satisfy four out of the five elements of his claim.   Defendants contend, however, that Plaintiff has insufficiently pled one key element - that the alleged harassment "unreasonably interfered with plaintiff's work performance because it created a hostile, intimidating, or offensive work environment."   *Id.*   Defendants suggests that the relatively few incidents described by Plaintiff are insufficient as a matter of law to make out this key element of his claim.   I disagree.

In *Barrett*, the Sixth Circuit affirmed summary judgment concerning the hostile work environment claims of two plaintiffs where those plaintiffs' allegations and proof were insufficient to show that the discriminatory conduct was sufficiently "severe or pervasive." *Id., * 556 F.3d at 514.   However, in *Barrett*, the two Caucasian plaintiffs simply witnessed a handful of discriminatory comments and acts directed toward African Americans; virtually none of the alleged incidents were "directly harassing" toward the plaintiffs.   In affirming summary judgment, the Sixth Circuit noted that "no one...ever actually said that they disapproved of [plaintiff Barrett's] interactions with black co-workers" and that plaintiff "introduced no evidence...that [her supervisor] directed desirable work away from her." *Id.* at 517.   The second plaintiff likewise "does not allege hearing a single remark that reflects discrimination directly toward her as a result of her associations with or advocacy on behalf of blacks."   *Id.* at 518.

By contrast, the Sixth Circuit reversed summary judgment against a third plaintiff who alleged that: 1) she was threatened with physical violence based on her association with an African American co-worker; 2) co-workers and supervisors "frequently made racially derogatory comments criticizing her association," and 3) on two occasions a

8

supervisor and a co-worker attempted to prevent her from applying for job advancements because of her association with an African American co-worker.  *Id.* at 519-520.  Because this third plaintiff experienced a hostile environment directed at her, her allegations were sufficient - if believed by a jury- to give rise to the employer's liability.  *Id.*

Like the third plaintiff in *Barrett*, in this case Plaintiff McFarland alleges that he personally was harassed by supervisors "in a persistent pattern" that included but was not limited to "belittling him in front of customers and other employees, screaming at McFarland for hours at a time, and threatening McFarland's employment" based upon his refusal to comply with his employer's racially discriminatory policies.  He alleges that he was ultimately terminated for the same reason.  To the extent that Defendants suggest that they are entitled to dismissal due to Plaintiff's failure to allege a threat of physical violence, they are mistaken.  Such a threat merely constitutes one way in which to prove that discriminatory conduct is "severe."

Borrowing from Judge Black's analysis in denying Defendants' prior motion to dismiss Plaintiff's emotional distress claim, I conclude that Plaintiff has alleged conduct that was sufficiently "severe" to survive Defendants' motion to dismiss.  The incidents alleged by Plaintiff over the seven month period could - if supported by adequate proof- demonstrate a hostile, intimidating, or offensive work environment:

> Plaintiff has alleged that Defendant prohibited from hiring African Americans, required him to break federal and state law by terminating and refusing to hire African Americans, and ultimately terminated him for his refusal to discriminate. ...The undersigned finds that such conduct is outrageous and "intolerable in a civilized community."  Additionally, while the Court recognizes that humiliation and embarrassment are insufficient injuries to sustain a claim, Plaintiff also alleges that he suffered severe emotional distress.

(Doc. 22 at 5).

### 3.  Additional Ground Raised by Defendants Ballato and Dunn

In their separate motion to dismiss, Defendants Ballato and Dunn additionally argue that Plaintiff's hostile work environment claim should be dismissed pursuant to the court's prior ruling that any Title VII claims are duplicative and/or not cognizable against them individually as supervisors.  In his response, Plaintiff agrees that the allegations concerning the hostile work environment claim only pertain to Defendants Breads and Panera, LLC. (Doc. 38 at 2).  Thus, that portion of the individual Defendants' motion is moot.  (Doc. 42 at 2).

### B.    Defendant Panera's Motion for Summary Judgment (Doc.  39)

Defendant Panera, LLC also has moved for summary judgment on all of Plaintiff's claims, on grounds that it cannot be sued under Title VII as a matter of law because it was not Plaintiff's employer.  All of Plaintiff's federal and state claims against Defendant Panera, LLC are premised on proof that Defendant was his "employer."  Absent an employment relationship, Defendant cannot be held liable for employment discrimination.

In response, Plaintiff argues that there is a material issue of fact concerning whether Defendant Panera, LLC was in fact Plaintiff's employer.  In the alternative, Plaintiff seeks discovery pursuant to Rule 56(f) in order to obtain additional evidence to prove an employer/employee relationship.   Because I conclude that Defendant Panera, LLC was not Plaintiff's employer, and because no material issue of fact exists or could be created through additional discovery, I recommend that Panera, LLC be granted judgment as a matter of law.

### 1.  Two Defendants and One Non-Party:  Who's Who in Bread

Before turning to the merits of Defendant Panera LLC's motion, it is necessary to clarify the parties' names and the portions of their roles that are undisputed.  Some of the names are confusingly - if understandably- similar, given that the two named corporate Defendants enjoy a franchisor/franchisee relationship.

Defendant Breads of the World was unquestionably Plaintiff's employer.  Breads owns and operates several franchised Panera Bread stores.  As one of Plaintiff's exhibits, entitled "A Brief History of Panera Bread/Saint Louis Bread Company," explains:

> Breads of the World, L.L.C. was formed in 1995 by Doron Berger, Ken Rosenthal and Jeff Rains to open Panera Bread bakery/cafes in Ohio, Kentucky, and Colorado.

(Doc. 43-3 at 6).

Plaintiff was employed by Breads at the "Panera Bread" franchise store in Springdale, Ohio, sometimes referred to as the Tri-County store.  While represented by the same attorney who appears on behalf of Plaintiff here, Plaintiff filed his charge of discrimination before the Equal Opportunity Employment Commission ("EEOC").  Plaintiff's EEOC charge identified "Breads of the World" located in Columbus, Ohio as Plaintiff's employer.  (Doc. 33-1).  The same EEOC charge *additionally* identified "Panera Bread" located at 405 East Kemper in Springdale Ohio as Plaintiff's employer.  (Doc. 33-1).  The Panera Bread store located at the Springdale, Ohio address was owned and operated by Breads and is the specific franchise at which Plaintiff was employed.

Panera Bread Company (hereinafter "Company"), a publicly traded company,  has never been named as a party to this litigation.  The only named corporate defendant in this

litigation other than Breads is Defendant Panera, LLC  (hereinafter "LLC").[2]  Panera LLC is a wholly owned subsidiary of Panera Bread Company.  The privately held LLC is the operating company for its parent Company.  (Doc. 8).  As stated, Plaintiff's EEOC charge identified as his employer only "Breads of the World" and "Panera Bread" (more specifically identified by the address of the Springdale franchise store location operated by Breads). (Doc. 33-1).  Plaintiff did not identify either the non-party "Company" or Defendant LLC as his "employer" in his EEOC charge.

Despite having failed to name either Company or LLC in his EEOC charge, Plaintiff alleges in this court that he "was employed by Defendants [LLC] *and* Breads until July 21, 2009," and that individual Defendants Dunn and Bellato were supervisors and representatives "of [LLC] *and* Breads at all times relevant hereto." (Doc. 29 at ¶¶12, 14, 15)(emphasis added).  Plaintiff further alleges that Defendants Dunn and Bellato "had significant control over hiring, firing, and working conditions of Defendants [LLC] and Breads at all times...."  (Doc. 29 at ¶16).

Plaintiff claims that both Defendants LLC and Breads "engaged in unlawful retaliation" by terminating his employment in response to Plaintiff's refusal to comply with "[LLC's] and Breads' requirement to terminate the African American employees and not hire any African Americans."  (Doc. 29 at ¶¶24-25.).  Plaintiff describes Dunn and Ballato as "managers," and as "supervisors and representatives" of both Defendants LLC and Breads.  (Doc. 29 at ¶¶26, 38, 39).  He alleges that both LLC and Breads terminated Plaintiff.  (Doc. 29 at ¶43).

---

[2]In both pleadings and memoranda filed in this litigation, Plaintiff refers to Defendant LLC as simply "Panera."  Due to the use of the Panera trademark by all three entities and in an effort to avoid greater confusion than necessary, the court declines to do the same.

### 2. Theories Under Which LLC Could Be Considered Plaintiff's Employer

In most cases of employment discrimination, there is little dispute concerning the identity of the plaintiff's employer; that name usually appears on such forms and documents as the employment contract, the employee's paycheck and his W-2 form.  In this case, there is no dispute that Defendant Breads was Plaintiff's direct employer.

The only issue, then, is whether the entirely separate corporate entity, Panera, LLC, should also be considered Plaintiff's employer by virtue of its franchisor/franchisee relationship with Breads.  In the cases cited by the parties herein and independently researched by the undersigned in which the issue has been addressed, courts have been nearly uniform in holding that a franchisor should not be deemed to be an "employer" for purposes of Title VII when the plaintiff works for an independently owned franchise.  *See, e.g., Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062 (10th Cir. 1998); *Evans v. McDonald's Corp.,* 936 F.2d 1087 (10th Cir. 1991); *McLaurin v. Fusco*, 629 F. Supp.2d 657 (S.D. Miss. 2009); *Matthews v. International House of Pancakes, Inc.*, 597 F. Supp.2d 663 (E.D. La. 2009); *Gilbert v. Choo-Choo Partners, II, LLC,* 2005 WL 1263065 (E.D. Tenn. 2005); *Spaulding v. NW Hospitality Investment Co., LLC*, 209 F. Supp.2d 1149 (D. Kan. 2002); *Alberter v. McDonald's Corp.*, 70 F. Supp.2d 1138 (D. Nev. 1999); *Greenway v. Buffalo Hilton Hotel*, 951 F. Supp.1039 (W.D.N.Y. 1997); *Scales v. Sonic Industries, Inc.*, 887 F. Supp. 1435 (E.D. Okl., 1995).

Be that as it may, the mere existence of a franchisor/franchisee contract does not insulate a franchisor from liability.  Just as affiliated corporate entities may be held liable for one another's debts under special circumstances, so too may a corporate affiliate that is not a "direct" employer be held liable under Title VII.  In this case, Plaintiff argues that

13

Defendant LLC should be considered to be Plaintiff's employer for purposes of Title VII under any one of three different theories: 1) the single employer test; 2) the joint employer doctrine; and/or 3) agency theory.

### a) The Single Employer Test

The Sixth Circuit has adopted the "single employer" test for determining when an affiliated entity may be considered to be a litigant's employer for an employment discrimination claim, even if that entity is not identified as such on the plaintiff's W-2. *See Armbruster v. Quinn,* 711 F.2d 1332, 1338 (6th Cir. 1983)(adopting a "facts and circumstances" test analogous to the question of single-employer status in the National Labor Relations Act context)(abrogated on other grounds by *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S. Ct. 1235 (2006)). Under the "single employer" test, this court must evaluate four factors to determine if Defendant LLC may be held liable for the actions of its franchisee: 1) the interrelation of operations between the two Defendants; 2) whether they share common management, common directors and boards; 3) whether LLC exercises centralized control over Breads' labor relations and personnel; and 4) whether LLC and Breads are under common ownership and financial control. *See Swallows v. Barnes and Nobel Book Stores, Inc.*, 128 F.3d 990, 994 (6th Cir. 1997).

Turning to the first two factors, Plaintiff argues that the two entities have interrelated operations and common management even though the franchise agreement clearly identifies Breads as an independent owner of the Springdale Panera store. However, no officers or directors of Breads are officers or directors of Company or of LLC. (Doc. 39-1,

Affidavit of Richard Armstrong[3] at ¶8). LLC does not own or maintain any of Bread's real estate, (*id.* at ¶¶9, 11), or any of the fixtures or food products at any of Bread's cafes, including the Springdale store. (*Id.* at ¶10). In addition, Breads may not make any express or implied agreements, warranties, guarantees or representations or incur any debts in the name of LLC or on its behalf. (Doc. 39-1 at 7, Franchise Agreement §17.01).

Plaintiff also contends that employees of Breads completed applications for employment on forms that "identified both Panera [LLC] and Breads as the employer." Plaintiff attaches additional exhibits to support his argument that each of the two Defendants were identified on stationary to new employees as a single apparent employer, and that new employees were provided with a "Panera Employee Handbook." Plaintiff particularly relies on the handbook to argue that an issue of fact exists as to whether the Defendants shared common corporate relations, because the handbook states that if conflicts regarding benefits arise between the handbook and the other documents:

> [T]he official Panera Bread policies, procedures and benefit plans are the ruling documents. Questions should be directed to Human Resources, Panera Bread, 877 Bethel Road, Columbus, Ohio 43215.

(Doc. 43 at 2). Similarly, Plaintiff cites a managerial training packet, use of "Panera stationary," and a disciplinary report on "Panera letterhead." Plaintiff also has filed an affidavit in which he states that his supervisors told him on "an ongoing basis" that he was a representative of "Panera LLC." (Doc. 43-11 at ¶3).

With the exception of Plaintiff's affidavit, none of Plaintiff's exhibits serve to create a genuine issue of material fact as to whether LLC and Breads have interrelated operations

---

[3]Mr. Armstrong is employed as the Director of Franchise Administration by Panera, LLC in that entity's corporate office in St. Louis, Missouri. (Doc. 39-1 at ¶¶2-3).

or common management.  None of the documents refer in any way to the Defendant identified as "Panera *LLC*."  Rather, the documents contain markings that consist exclusively of the "Panera" trademark, and reference only: a) the Panera brand; b) the Springdale, Ohio Panera Bread store owned and operated by Breads; or c) Breads' corporate identity/address.  (See Doc. 43, Exhibits 1-10).

Unrebutted evidence submitted by Defendant LLC in support of summary judgment confirms the lack of interrelated operations or common management with Breads.  Neither Company nor LLC play any role in Breads' payroll system, or vice-versa, (Doc. 39-1, Affidavit at ¶14), or Breads' accounts payable system (*Id.* at ¶15).  Neither Company nor LLC is a custodian of Breads' business records, or vice versa.  (*Id.* at ¶16).

Looking at the "common ownership" factor, Plaintiff also contends that LLC's retention of authority to approve of Breads' operating partners and members, as well as its right to review Breads' financial records, supports a finding of "common ownership." Again, Plaintiff is mistaken.  The Sixth Circuit has construed the "common ownership" factor as an inquiry into the legitimacy of the corporate formalities of each entity, to determine whether either is a "sham."  *E.E.O.C. v. Wooster Brush Co. Employees Relief Assoc.,* 727 F.2d 566, 572 (6th Cir. 1984).  Neither Company nor LLC owns any ownership interest in Breads, including but not limited to common stock.  (Doc. 39-1, Affidavit at ¶8). Neither Company nor LLC shares any bank or other financial accounts with Breads, nor is Company or LLC an authorized signatory on any of Breads' accounts.  (*Id.* at ¶12). Breads is not indebted to Company or LLC.  (*Id.* at ¶13).  The only financial records of Breads to which LLC has access are an annual balance sheet, necessary to satisfy debt/equity covenants in the Franchise Agreement, and point of sale cash register records

16

required to pay royalties/franchise fees. (*Id.* at ¶17). Thus, neither of the corporate entities is a "sham" in this case. The type of limited authority exercised by LLC to approve Breads' operations and financial records in the parties' Franchise Agreement is insufficient to prove common ownership.

Turning to the last factor of the single ownership test, Plaintiff argues that LLC played a central role in Breads' labor relations. Plaintiff again points to such documents as his job application, stationary, and an employee handbook that "is littered with Panera's name and logos," and "bears a Panera copyright." (Doc. 43 at 12). Plaintiff asserts that the handbook distributed by Breads to employees plays a role "in the hiring, firing, disciplinary, and day-to-day decisions regarding Breads' employees" and contains references throughout to specific "Panera Bread" policies. (*See* Doc. 43-3). As explained previously, however, the documents on which Plaintiff relies reference the Panera trademark or the franchised store run by Breads. Nowhere in any of the documents - including the handbook - is there any reference to Panera, LLC.

In fact, contrary to Plaintiff's assertion concerning employment decisions, the Franchise Agreement between LLC and Breads expressly states: "You [Breads] are solely responsible for all employment decisions with respect to your Personnel, including, hiring, firing, compensation, training, supervision and discipline, and regardless whether you receive advice from us on any of these subjects." (Doc. 39-1 at 7, §9.07). The same Agreement prohibits Breads from recruiting or hiring any person who is an employee of Company or LLC, or of any other store operated by LLC, its affiliates or another franchisee without obtaining the employer's consent. (*Id.*). The Agreement makes clear that Breads is an independent contractor. (*Id.*, at §17.01). Neither entity is a special agent, joint

venturer, partner, or employee of each other.  (Id., at §17.01).   Also contrary to the allegations of Plaintiff's Amended Complaint, neither Plaintiff nor Defendants Dunn or Ballato have ever been identified as employees of either Company or LLC.  (Doc. 39-1, Affidavit at ¶22).  The single assertion by Plaintiff in his affidavit that the two individual Defendants told him he was a "representative" (not employee) of Panera LLC is insufficient to create an issue of fact in light of the overwhelming and unrebutted evidence that LLC did not involve itself in Breads' employment decisions.

In short, there is simply no evidence at all that Defendant LLC controlled Breads' day-to-day labor relations so as to consider Breads and LLC as a "single employer." Plaintiff is quick to point out early case support for the proposition that "[a]ll four criteria need not be present in all cases and, even when no evidence of common control of labor relations policy is presented, the circumstances may be such that the Title VII single-employer doctrine is applicable." *Armbruster,* 711 F.2d at 1338.  However, later published cases both in the Sixth Circuit and from other jurisdictions have noted that a focus on the "centralized control of labor" factor is particularly apt in the Title VII context.   *See, e.g., Swallows v. Barnes and Nobel Book Stores, Inc.*, 128 F.3d at 995 (quoting with approval cases holding that "the critical question is what entity made the final decisions regarding employment matters related to the person claiming discrimination?")(internal quotation marks and citations omitted); *McLaurin v. Fusco*, 629 F. Supp.2d 657 (S.D. Miss. 2009)(noting that the centralized control of labor relations factor has traditionally been most important).  For example in *Swallows*, the court found that even though the alleged "employer" had some voice in certain employment decisions, it did not qualify as a true "employer" because it did not make or have the authority to hire and fire Barnes & Noble

18

staff. *Id*.

The court's examination of the labor relations factor in *Matthews v. International House of Pancakes, Inc.*, 597 F. Supp. 663 (E.D. La. 2009) summarizes the focus of most courts:

> Select courts that have found a franchisor to be an employer under Title VII...have reached this conclusion only after determining that the franchisor required the franchisee to adopt specific employment policies. ... When deciding whether a franchisor's actions give rise to a legal duty, courts distinguish between "*recommendations* and *requirements*." *See, e.g., Wu v. Dunkin Donuts, Inc.*, 105 F. Supp.2d 83, 87-90 (E.D.N.Y. 2000)(chronicaling nationwide cases addressing franchisor liability and noting this distinction)(emphasis in original); *See also [Patsy Freeman v. Suddle Enterprises, Inc.*], 179 F. Supp.2d at 1356. Moreover, where a franchisor requires its franchisee to hire, train, and supervise employees in accordance with extensive guidelines and reserves the right to impose discipline upon employees engaging in discriminatory acts, certain courts have found an agency relationship. *See, e.g., Miller v. D.F. Zee's, Inc.*, 31 F. Supp.2d 792, 806-07 (D. Or. 1998).

*Matthews,*, 597 F. Supp.2d at 670.

LLC has presented unrebutted evidence that it did not exercise any form of control over Breads' employment decisions. LLC did not draft or amend any of the documents upon which Plaintiff relies to oppose summary judgment, such as the handbook, Breads' pay scale, or Breads' training programs. (Doc. 39-1, Affidavit at ¶18). LLC played no role in the hiring, firing, disciplinary, or day-to-day decisions with respect to Breads' employees.

 (*Id.* at ¶19). Breads did not consult LLC with respect to decisions regarding Plaintiff's employment, and played no role in any of the conduct alleged in the complaint. (*Id.* at ¶20-21). At most, Defendant LLC exercised the type of minimal control over Breads' labor relations that one would expect of a franchisor. Such control is legally insufficient to prove that Breads and LLC operated as a single employer. *Accord Baetzel v. Home Instead*

19

*Senior Care*, 370 F.Supp.2d 631, 640 (N.D. Ohio 2005)(guidance provided by franchisor to ensure uniformity and standardization in the services provided by all of its franchisees insufficient to prove that the entities were so interrelated as to constitute a single employer).

### b)  Joint Employer Test

The second theory under which Plaintiff argues that LLC could be held liable as his employer is if LLC is considered to be a "joint employer" with Breads.   Unlike the single employer doctrine, which focuses on the interrelatedness of separate corporate entities, the joint employer doctrine focuses on whether separate entities jointly control each others' employees, including "the supervision of the employees' day to day activities, authority to hire or fire employees, promulgation of work rules and conditions of employment, work assignments, and issuance of operating instructions." *Olynyk v. CRA Occupational Health, Inc.,* 2005 WL 1459547 (N.D. Ohio June 21, 2005).  As discussed, LLC has offered unrebutted evidence that it played no role at all in Breads' employee relations issues, including but not limited to the day-to-day supervision of Breads' employees.  (Doc. 39-1, Affidavit at  ¶¶18-21).

### c)  Agency Theory

For the same reasons, Plaintiff's contention that LLC might be liable under an "agency theory" of employment is insufficient to defeat LLC's motion for summary judgment.    The Sixth Circuit has recognized that the single employer theory and the agency theory are "essentially the same." *Satterfield v. Tennessee*, 295 F.3d 611, 618 n.6 (6th Cir. 2002)(collecting cases).  In any event, the Agreement makes clear that Breads is an independent contractor.  (Doc. 39-1 at 7, §17.01).  Neither entity is a special agent, joint

venturer, partner, or employee of each other.  (*Id.*, at §17.01).  *See also Freeman v. Suddle Enterprises, Inc.,* 179 F. Supp.2d 1351 (M.D. Ala., 2001)(franchisor not liable as agent under Title VII).

### 3.  Emotional Distress Claim

In addition to being entitled to summary judgment on Plaintiff's claims derived from the alleged employer/employee relationship, LLC is entitled to judgment as a matter of law on Plaintiff's Intentional Infliction of Emotional Distress claim.  Although such a claim is not dependent on proof that LLC was Plaintiff's employer, nevertheless it requires proof that LLC took *some* action or was involved in some fashion in the alleged wrong.  Plaintiff's sole allegations against LLC rest upon an employer/employee relationship that LLC has proven did not exist.  Plaintiff's emotional distress claim arises directly out of the conduct of Defendants Dunn and Ballato, both or whom were - like Plaintiff himself- employees of Breads.  LLC cannot be held liable for the actions of Breads' employees, because LLC did not have control over those individuals, and LLC did not consult with Breads regarding Breads' employment decisions.

### 4.  Plaintiff's Rule 56(f) Motion

Although Plaintiff filed a response opposing LLC's motion for summary judgment, he has filed, in the alternative, a motion seeking additional discovery under Fed. R. Civ. P. 56(f), to the extent that this court may be inclined to grant Defendant's motion.  As Plaintiff notes, LLC filed a motion to dismiss in lieu of an answer and has yet to answer the complaint despite also moving for summary judgment.   Moreover, Plaintiff has yet to conduct any discovery in this case.  Plaintiff argues that if he is permitted the opportunity to conduct discovery, he will seek document discovery and depositions to challenge the

veracity of the representations made in Defendant LLC's affidavit and Franchise Agreement, including: 1) the complete Franchise Agreement; 2) information concerning the interrelation between LLC and Breads; 3) business cards, financial and bank records of LLC and Breads; 4) property agreements of LLC and Breads; 5) real estates agreements of LLC and Breads; 6) payroll systems of LLC and Breads; and 7) information concerning labor relations and/or employee relations of LLC and Breads. In addition, Plaintiff would seek from both entities: copies of handbooks, employee applications, benefits programs, information concerning workers' compensation carriers, pay scales, and training programs, and information concerning the accounts payable systems. Plaintiff asserts that he also "may" request ownership material pertaining to fixtures and food products in the Springdale store, and information concerning the maintenance of real estate by Breads. Plaintiff seeks to depose, at a minimum, Richard Armstrong. He argues that additional discovery "may or would provide additional support to demonstrate that under the 'single-employer doctrine,' 'joint-employer' test, or under the common laws of agency, Defendant [LLC] would be considered Plaintiff's employer." (Doc. 44 at 5).

I find this to be the rare case in which summary judgment is appropriate despite the relative infancy of this litigation. As stated at the outset of the court's analysis, other courts addressing this issue have been nearly uniform in holding that a franchisor is not liable as an employer under Title VII for the actions of an independently owned franchisee. Although the court recognizes that Plaintiff has had little opportunity for discovery, none of his exhibits remotely suggest that additional discovery would create an issue of fact on any of the theories he argues form a basis for LLC's liability. In addition, although Plaintiff has complied with the Rule 56(f) requirement that he attach an affidavit to his motion for

22

additional discovery, his affidavit does not sufficiently identify <u>probable</u> facts that he is <u>likely</u> to discover in opposition to Defendant's motion; rather, the affidavit amounts to a wish list that a rather large fishing expedition over a long period of time will land some type of fish.

 Compare *Spaulding v. NW Hospitality,* 209 F. Supp.2d 1149 (D. Kan. 2002)(additional discovery not warranted in hopes of proving single-employer theory based on evidence presented by franchisor in its motion for summary judgment). Last, as discussed below, I conclude that Plaintiff's failure to name Defendant Panera, LLC as his employer in his EEOC proceedings provides an additional basis for dismissal of all claims against that Defendant.

### C. Sua Sponte Jurisdictional Review of Title VII Claims against Panera, LLC

Although the issue has not been raised by Defendant Panera, LLC, Plaintiff's failure to identify Defendant LLC in his EEOC charge *may* amount to a fatal jurisdictional defect concerning his Title VII claims against that Defendant.[4] *See Baetzel v. Home Instead Senior Care*, 370 F. Supp.2d at 636. "[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue sua sponte." *Answers in Genesis of Ky., Inc., v. Creation Ministries Int'l, Ltd.,* 556 F.3d 459, 465 (6th Cir. 2009)(citations omitted).

In *Baetzel*, the court was presented with similar circumstances: a plaintiff attempting to sue a franchisor under Title VII as well as the franchisee-employer for whom she worked. On similar facts, the court there held that Ms. Baetzel had failed to prove the

---

[4]Consistent with the court's discussion concerning Defendants' motion to dismiss under Rule 12(b)(1), the court recognizes that more recent case law since *Arbaugh* calls into question the Sixth Circuit's prior holdings that an inconsistency between a litigant's EEOC charge and his Title VII complaint in federal court constitutes a jurisdictional defect. Nevertheless, the court raises the issue based on prior controlling case law, since it remains the duty of a federal court to consider jurisdiction in every case.

existence of subject matter jurisdiction over the Title VII claims filed against the franchisor, as opposed to her direct employer, the franchise owner.

> As a jurisdictional prerequisite to filing suit under Title VII, the plaintiff must first file a timely charge of discrimination with the EEOC against the party named as a defendant ....This naming requirement ensures the defendant has notice of the EEOC proceedings, allowing it to preserve evidence relevant to the discrimination claim. *Romain v. Kurek,* 836 F.2d 241, 245 (6th Cir. 1987). The naming requirement also affords the defendant an opportunity to participate in the EEOC conciliation process in an effort to spare the parties from time consuming and expensive litigation. *Id.* at 245.

> The failure to name a defendant as a respondent in the EEOC charge does not necessarily precipitate dismissal. Indeed, the unnamed part will not be dismissed from a Title VII suit if it shares an "identity of interest" with the party named in the EEOC charge....The Sixth Circuit employs two means for determining if the named party shares an identity of interest with the unnamed party. *Id.*

> In the first method, a court may find an identity of interest where the unnamed party "has been provided adequate notice of the charge under circumstances which afford him [sic] an opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Id.*

*Id.* at 636.

As in *Baetzel,* there has been no evidence presented that Defendant LLC received adequate notice of Plaintiff's EEOC charge or participated in the EEOC process. The body of the charge contains no formal or informal reference to "Panera, LLC" as opposed to the independently owned Springdale Panera store. *See also Matthews v. Internat'l House of Pancakes, Inc.*, 597 F. Supp.2d at 670 (noting plaintiffs' failure to name franchisor in EEOC charges); *but contra Scales v. Sonic Industries, Inc.*, 887 F. Supp. 1435 (E.D. Okl. 1995)(holding that failure to name franchisor in EEOC charge did not deprive court of jurisdiction over defendant where plaintiff informally referred to separate corporate entity in body of charge).

24

When a plaintiff has failed to directly name an affiliated corporate "employer" in his EEOC charge that he later names in a federal suit, courts also consider whether the failure should be excused due to an identity of interest between the named and unnamed parties at the time the plaintiff filed charges. Four factors are considered to determine whether an identity of interests exists, including: 1) whether the role of the unnamed party could through reasonable effort be ascertained at the time of the filing of the EEOC complaint; 2) whether the interests of the named party and the unnamed party as so similar that it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether the unnamed party's absence from EEOC proceedings resulted in actual prejudice to it; and 4) whether the unnamed party has represented to the complainant that its relationship is to be through the named party. *Baetzel*, 370 F.Supp.2d at 636.

For the reasons discussed above as well as the four factors discussed in *Baetzel*, Plaintiff has failed to demonstrate that Defendant Breads and Defendant LLC shared an identity of interests so close that Plaintiff was not required to name LLC in his EEOC charge. Rather, Plaintiff's failure to identify LLC results in a fatal defect concerning his Title VII claims against that Defendant.

Plaintiff's own exhibits confirm that he was aware that the Tri-County Panera Bread store owned and operated by Breads was a franchise. Plaintiff was represented by counsel by the time he filed his EEOC charge, and easily could have ascertained that Panera, LLC was a separate corporate entity with an address separate from Breads. In fact, at least one court has held that the identity of interest exception to the EEOC filing requirement does not apply to permit suit against a party not named in the EEOC charge in cases where a plaintiff has had the benefit of representation by counsel when he filed

25

the EEOC charge. *See, e.g., Darden v. DaimlerChrysler North America Holding Corp.*, 191 F. Supp.2d 382. 389-90 (S.D.N.Y. 2002).

As more thoroughly discussed above, evidence of a standard franchise agreement is not evidence of an integrated enterprise or "alter ego" theory. Otherwise, franchisors would be routinely held liable as "employers"under Title VII and the formalities of a separate corporate existence would all but cease to exist. *See generally, Baetzel*, 370 F. Supp.2d at 637-638. Nor can it be said that the interests of franchisors and franchisees in defending an EEOC complaint necessarily would be aligned. The interests of a franchise owner against whom the charge has been filed may well "find it more advantageous to contest the ...charge than would [the franchisor], whose interests extend to preserving goodwill for all of its franchisees and protecting its customers from threats to their health or safety." *Id.* at 638. An unnamed party's absence from EEOC proceedings in such circumstances will nearly always be prejudicial. Last, Plaintiff has offered no evidence of any involvement by Defendant LLC in his termination.

To the extent that the failure to name a defendant in an EEOC charge may yet be considered to be a jurisdictional defect in the Sixth Circuit, Plaintiff's Title VII claims against LLC should be dismissed based upon his failure to name Panera, LLC in his EEOC charge.

### III. Conclusion and Recommendation

For all the reasons discussed above, **IT IS RECOMMENDED THAT:**

1. Defendants' motions to dismiss (Docs. 33, 34, 35) be **DENIED;**

2. Defendant Panera LLC's motion for summary judgment (Doc. 39) be **GRANTED;**

3. Plaintiff's motion for additional Rule 56(f) discovery (Doc. 44) be **DENIED.**

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ROBERT MCFARLAND,                                    Case No. 1:09-cv-929

        Plaintiff,                                     Weber, J.
                                                     Bowman, M.J.

    v.

BREADS OF THE WORLD, LLC., et al.,

        Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

28